Norvel THOMAS, Plaintiff-Respondent,

v.

COMMERCIAL CREDIT CORPORATION, a Corporation, Defendant-Appellant.

No. 23105.

Kansas City Court of Appeals.

Missouri.

May 9, 1960.

Byron E. Mintonye, Preston H. Longino, Kansas City, for appellant.

Cornelius Costello, C. David Whipple, Kansas City, for respondent.

BROADDUS, Judge.

Plaintiff's petition herein alleged, in substance, that on April 22, 1958, he was the owner of a 1950 Buick automobile, motor number V2629475, which automobile was of the value of $400; that on said date said automobile was parked in front of plaintiff's house located at 3115 Montgall, in Kansas City, Missouri; that defendant unlawfully drove said motor vehicle away; that said automobile was returned to plaintiff in a damaged condition and that certain personal property contained therein was missing and as a result of defendant's wrongful taking of said automobile plaintiff was damaged to the extent of $2,000. Plaintiff also alleged that defendant's acts

were willful and wanton and that he was likewise entitled to punitive damages in the sum of $8,000.

Defendant was duly served with process. Its attorney prepared an answer. However, the person whose duty it was to file said answer became seriously ill and, as a result thereof, it was not filed and defendant became in default.

On March 20, 1959, the case was called for trial. Defendant did not appear, nor did anyone appear for it. After a hearing the court entered judgment for plaintiff in the sum of $500, actual damages, and $2,000 as punitive damages, together with costs.

■ Thereafter, defendant filed in this court a motion seeking a special order allowing an appeal from the judgment as authorized by Section 512.060, V.A.M.S. 1949. We found that there was merit in defendant's claim for special order and that the delay was not due to defendant's culpable negligence and allowed the appeal.

Plaintiff was the only witness at the hearing. He testified that he was a deputy sheriff and resided at 3115 Montgall; that on April 22, 1958, he was the owner of a 1950 Buick automobile, motor number V2629475 of the value of "about $400 or $500;" that on the preceding night this car was parked in front of his house. Plaintiff was also the owner of another Buick automobile, which "was parked beside the house." While it was still dark on the morning of April 22, plaintiff got in the Buick which had been parked beside his house and drove to work. He testified that at that time he "didn't even miss the car" which had been parked in front of the house; that when he got to work his wife called him on the telephone and told him that the car was gone; that he called the police and "reported the car stolen, they said give me the license number. They said the Commercial Credit picked that car up about 4:00 o'clock this morning. * * * I asked them what business do they have to pick up *that car*. They said 'Did you

owe on it?' I said, 'No, I paid cash on that car.' "

Plaintiff further testified that the 1950 Buick was returned to his home "later that day, after eight o'clock in the morning;" that he found damage to the front fender and bumper and said that "it had golf tools in it, they were gone"; that the damage to the car amounted to about $200; that the personal property belonging to him and consisting of the golf tool set worth $300 or $400 and some baby things, baby buggy and baby seat and a spare tire, all of which were in the back seat were missing and that the tire was worth $20. Later in his testimony he referred to "golf clubs" and when asked: "What did you pay for the golf clubs?" He answered: "I paid about $200 for the whole thing, I bought it off of another fellow."

The court inquired of plaintiff:

"Didn't your curiosity get the best of you as to why they brought it back after you reported it? A. I bought another car from them.

"Q. Didn't you later talk to the police about it too? A. Yes.

"Q. And as to how the car was brought back? A. Yes.

"Q. Did the police also inform you how the car was brought back? A. They told me they just checked and they found out they had the wrong car, they picked up the wrong car."

The transcript discloses that the Buick automobile which plaintiff drove to work on the morning of April 22, 1958, bore the motor number stated in plaintiff's petition; that defendant held a purchase money chattel mortgage on this car which called for a payment of $55.20 on the 17th day of each month; that said chattel mortgage provided that in the event of default plaintiff authorized defendant to "enter any premises where said car may be found, and take possession of it;" that on April 22, 1958, neither the $55.20 payment due on March 17, 1958, nor the $55.20 payment due de-

fendant on April 17, 1958, had been made, so that defendant had both plaintiff's written permission and the legal right to repossess the automobile under the terms and conditions of the chattel mortgage.

■ Defendant makes three assignments of error, the first being that plaintiff did not produce any competent evidence to establish that defendant took the automobile. In view of the fact that defendant was in default the court was entitled to take as true the allegation of the petition that defendant took possession of the automobile. Fawkes v. National Refining Co., 341 Mo. 630, 108 S.W.2d 7, 10.

■ Defendant's second contention is that plaintiff did 'not offer any competent evidence showing that he had sustained actual damages. That this contention is without merit clearly appears from the testimony of plaintiff which we have heretofore set out.

■ Defendant's. last contention is that the court erred in awarding punitive damages. While it is true that the court may, in the event of default, treat as true the allegations of the petition "there is no admission of the damages claimed. That must be proved." Putney v. DuBois Co., 240 Mo.App. 1075, 226 S.W.2d 737, 740. Plaintiff's brief concedes the rule to be as we have stated it.

■ In order to justify the recovery of punitive damages the act complained of must have been done willfully, wantonly, or maliciously. Faust v. East Prairie Milling Co., Mo.App., 20 S.W.2d 918, 920. As said by this court in the case of Walker v. Huddleston, 261 S.W.2d 502, 507: *"The party must know that the act is wrongful* and must do it intentionally without just cause or excuse. If he acts in good faith and in the honest belief that his act is lawful, he is not liable for punitive damages even though he may be mistaken as to the legality of his act." And, as stated in 15 Am.Jur. page 725: "exemplary damages are not authorized where a tort is committed unintentionally, through mistake or ignorance * * *."

The early case of Engle v. Jones, 51 Mo. 316, was an action in trespass for taking and converting two horses belonging to the plaintiff. The court said: "Unless the trespass is committed in a wanton, rude or aggravated manner, indicating oppression, malice or a desire to injure, the damages should be compensatory only." The rule announced in that case has never been departed from.

Whose act was it that brought about the occurrence which forms the basis of this lawsuit? Plaintiff's, of course. It came about by reason of his failure to pay his debts. He had not paid the installment of $55.20 due on March 17, 1958, nor had he paid the additional installment due on April 17. Defendant had a legal right to repossess the Buick automobile in which plaintiff rode to work on the morning of April 22. Clearly it was by mistake that defendant took the other Buick automobile which was parked in front of plaintiff's house. Plaintiff's own testimony shows this to be true. As he put it: "They picked up the wrong car." One can readily see how, under the circumstances, the mistake occurred. The two automobiles were of the *same* make, owned by the *same* person, and were parked at the *same* location.

■ There is no evidence in the instant case showing that defendant did not act in good faith and in the honest belief that its acts were lawful. Thus there was no basis for the award of punitive damages. Plaintiff has been amply compensated for the actual damages he sustained. Under the facts, that is all that he is legally and honestly entitled to.

If the plaintiff will, within fifteen days from this date, remit the sum of $2,000, the amount of the punitive damages, the judgment will be affirmed; otherwise, the judgment will be reversed and the cause remanded.

All concur.